**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL YDIGORAS,<br>Plaintiff,<br>v.<br>COSTCO WHOLESALE CORPORATION,<br>Defendant. | Case No.: 3:25-cv-01394-RBM-MMP<br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br>**[Doc. 12]** |

Pending before the Court is Defendant Costco Wholesale Corporation's ("Defendant" or "Costco") Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss") under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. 12.) *Pro se* Plaintiff Michael Ydigoras ("Plaintiff") filed an Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Opposition") (Doc. 13), and Defendant filed a Reply to Plaintiff's Opposition to Motion to Dismiss Plaintiff's Second Amended Complaint ("Reply"). (Doc. 14.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having reviewed the briefs above, and for the reasons below, Defendant's Motion to Dismiss (Doc. 12) is **GRANTED**.

# I. BACKGROUND

Plaintiff's Second Amended Complaint for Damages [Doc. 9 ("SAC")] "consists of five causes of action:" (1) negligence *per se*; (2) disability discrimination under Title III of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act ("Unruh Act");[1] (3) retaliation under the ADA;[2] (4) violations of the Elder Abuse and Dependent Adult Civil Protection Act, California Welfare and Institutions Code § 15600 *et seq*. ("Elder Abuse Act"); and (5) defamation. (*See* SAC at 2.)[3]

## A. Procedural Background

Plaintiff filed his initial complaint in San Diego state court on December 4, 2024. (Doc. 8 at 5.) On April 18, 2025, the state court issued an order "sustaining Defendant's demurrer to Plaintiff's initial complaint." (*Id.*) In June 2025, Defendant removed the action to this Court and moved to dismiss Plaintiff's First Amended Complaint ("FAC"). (Docs. 1, 3.) The Court granted that motion and dismissed the FAC with leave to amend. (Doc. 8.) On December 29, 2025, Plaintiff filed the SAC. (Doc. 9.) Defendant's Motion to Dismiss (Doc. 12) was fully briefed on March 16, 2026 (*see* Docs. 13, 14).

---

[1] Although Plaintiff also references the Ralph Act (SAC at 2, 5), the Court does not discuss it. First, the Court may not supply essential elements of a claim that are not pled. *Pena v. Gardner*, 976 F.2d 469, 471–72 (9th Cir. 1992) (citation omitted). Plaintiff's mere mention of the Ralph Act does not meet the pleading standard discussed below. Second, Plaintiff invokes the Ralph Act only as to the discrimination allegedly experienced by "the individual accompanying Plaintiff" during the events giving rise to this action. (*See* SAC at 5.) A *pro se* litigant cannot bring claims on behalf of others. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008).

[2] Plaintiff also appears to allege a retaliation claim under the Elder Abuse Act. (*See* SAC at 6–7.) But there is no private right of action for retaliation for reporting alleged elder abuse. *See Est. of Thelma Stern v. Tuscan Retreat, Inc.*, Case No. CV 14-5155 DSF (MANx), 2014 WL 12966416, at *4 n.9 (C.D. Cal. Dec. 17, 2014) (citing *Covenant Care, Inc. v. Super. Ct.*, 32 Cal. 4th 771, 779–80 (2004) and *Delaney v. Baker*, 20 Cal. 4th 23, 33 (1999)). Furthermore, in that same section of the SAC, Plaintiff cites to 42 U.S.C. § 12203, which is a provision of the ADA. Therefore, the Court construes Plaintiff to bring a retaliation claim solely under the ADA.

[3] The Court cites the CM/ECF electronic pagination for all filings unless otherwise noted.

**B. Factual Background**[4]

Plaintiff is a "[s]enior over 65 years of age" and "a permanently disabled individual under State and Federal definitions of disability." (SAC at 11.) Plaintiff, a 15-year patron of the Carlsbad Costco's Optical Department, noticed that a new hire, Nadia, appeared reluctant to assist Plaintiff "on or about the end of 2023." (*Id.* at 3.) "On or about a day in early Spring of 2024 it was noted Plaintiff was accompanied by a Veteran wearing a Navy Blue US Space Force Cap that was embroidered with the number 45 and a US Presidential Signature in yellow." (*Id.*) During this trip to Costco, Plaintiff asked a floor manager, Jay, why Nadia would often take her break whenever she saw Plaintiff in the store. (*Id.*) "Jay appeared bothered and did not reply." (*Id.*) Plaintiff then asked a different Costco Optical employee if "Jay was always so gruff." (*Id.*) That employee told Plaintiff something "to the effect of, 'Michael, that was a mistake, you shouldn't have gone to Jay about Nadia, they are in a relationship.'" (*Id.*)

In the weeks that followed this encounter, Jay and other Costco employees "would follow Plaintiff throughout the store, approach and peer into [his] shopping cart while in check out lines, and walk behind Plaintiff and others with whom Plaintiff shopped[,] brushing up against them." (*Id.*) For example, "[o]ne female Costco member [was] having conversation with Plaintiff at egress adjacent to food court" when "Jay approached Plaintiff and continued past brushing behind her." (*Id.* at 6.) Another time, Jay "approached and had a physical incursion onto Plaintiff chest to chest," with Plaintiff having to "raise[ ] his phone to block and for protection." (*Id.* at 8.) Plaintiff reported these incidents to Costco management, eventually speaking to the San Diego regional manager. (*Id.* at 3–4.) In these meetings with the regional manager, Plaintiff communicated that he was disabled, and requested, "as an ADA Reasonable Accommodation Request for Modification of

[4] The factual summary in this section reflects Plaintiff's allegations, not conclusions of fact or law by this Court. Well-pled factual allegations are accepted as true for purposes of the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Policy and/or Procedure," to speak to the Carlsbad Costco general manager, Lisa, to discuss his mistreatment by Costco employees. (*Id.* at 3–4.) Costco agreed to have Lisa meet with Plaintiff, but instead later terminated Plaintiff's Costco membership. (*Id.* at 4.)

During Plaintiff's conversations with Costco's counsel, counsel "falsely" explained to Plaintiff: "as you know, you are no longer a Costco member because of your previous mistreatment of Costco employees." (*Id.* at 7.) This statement contradicted other statements made by Costco, including: (1) a senior vice president's letter to Plaintiff indicating that Costco takes member service concerns seriously and hoping that Plaintiff would continue to enjoy the benefits of his Costco membership; and (2) an email from a different employee indicating that there were "no derogatory notes" in Plaintiff's file and that Plaintiff's membership had been terminated because Costco was no longer "able to meet [his] expectations." (*Id.* at 7–9.) Furthermore, the Carlsbad Costco "circulated" photographs of Plaintiff and Plaintiff's household members to its employees "for false and contested reasons." (*Id.* at 9.)

## II. LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under [Rule] 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (internal citation omitted). An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court liberally construes a *pro se* plaintiff's pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III. DISCUSSION

The SAC asserts five causes of action: (1) negligence *per se*; (2) disability discrimination under the ADA and the Unruh Act; (3) retaliation under the ADA; (4) violations of the Elder Abuse Act; and (5) defamation. (SAC at 2.)

### A. Disability Discrimination (Count Two)

#### 1. ADA

"Title III of the ADA prohibits discrimination by public accommodations." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1009 (9th Cir. 2017) (citation omitted). Section 12182 "begins with a 'General rule' in subsection (a): No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* (quoting 42 U.S.C. § 12182(a)).

For purposes of subsection (a), and relevant to the allegations in the Complaint, discrimination includes:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations

§ 12182(b)(2)(A)(ii).

To succeed under 42 U.S.C. § 12182(b)(2)(A)(ii), Plaintiff must show that:

> (1) he is disabled as that term is defined by the ADA; (2) [Defendant] is a private entity that owns, leases, or operates a place of public accommodation; (3) [Defendant] employed a discriminatory policy or practice; and (4) [Defendant] discriminated against [Plaintiff] based upon [Plaintiff's] disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate [Plaintiff's] disability.

*Karczewski*, 862 F.3d at 1010 (citation omitted).

Because Defendant does not contest the first or second elements (*see* Docs. 12-1 at 9–12), the Court turns to the third and fourth elements. Even if the initial refusal to assist Plaintiff or the later refusal to have Lisa speak with Plaintiff could be construed as a policy or practice, Plaintiff's claim still fails because it does not allege how Costco discriminated against Plaintiff based upon his disability. *See Pena*, 976 F.2d at 471–72 (even "a liberal interpretation" of a complaint "may not supply essential elements of the claim that were not initially pled") (citation omitted).

The "fundamental problem" with Plaintiff's ADA discrimination claim "is that the alleged course of conduct was not a denial of services by reason of plaintiff's disabled status. Yes, [Plaintiff] was denied services, and yes, [Plaintiff was disabled]. But the denial itself was not predicated on h[is] status as disabled." *Bouslog v. Care Options Mgmt. Plans & Supportive Servs., LLC*, 459 F. Supp. 3d 1281, 1287 (N.D. Cal. 2020) (granting the defendant's motion to dismiss the plaintiff's ADA claims). Indeed, Plaintiff himself questions the basis for his alleged mistreatment. (*See* SAC at 5 ("Whether the [alleged misconduct] was based upon the Veteran status of the individual accompanying Plaintiff . . . or [upon] perceived sexual orientation . . . .").) Plaintiff appears to argue that the precise reasons "may come to light during discovery." (*Id.* at 5; *see also id.* at 6 ("[t]here may be need for this witness to be subpoenaed"); Doc. 13 at 3–4 (noting that Costco's policies "may not be readily viewable [ ] without the discovery phase").) But a "request to engage in discovery to then be able to state a plausible claim for relief puts the cart before the horse." *Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Reservation*, Case No.: 3:17-cv-01436-GPC-MDD, 2018 WL 6018504, at *17 (S.D. Cal. Nov. 16, 2018); *see also Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Therefore, the Court finds that the SAC fails to allege that Plaintiff was discriminated against "based upon [Plaintiff's] disability." *Karczewski*, 862 F.3d at 1010. The ADA discrimination claim is **DISMISSED**.

**2. Unruh Civil Rights Act**

The Unruh Act provides: "All persons within the jurisdiction of this state . . . no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). "A plaintiff can recover under the [Unruh Act] on two alternate theories: (1) a violation of the ADA[]; or (2) denial of access to a business establishment based on intentional discrimination." *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1035 (2022). Because Plaintiff has not plausibly pled a violation of the ADA, he must establish that Defendant denied him access to a business establishment based on intentional discrimination. Plaintiff has failed to do so.

The Complaint falls short of alleging the "willful, affirmative misconduct" required to state an Unruh Act claim separate from an ADA claim. *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853 (2005). As one court reasoned:

> [The plaintiff] refers to allegations that District [d]efendants knew of [the plaintiff's] disability, knew how to handle it because of the provisions of the IEP, yet threatened [the plaintiff] with police intervention. . . . The Complaint alleges that there was no justification for this treatment. The Complaint alleges that District [d]efendants committed these acts "maliciously," "oppressively" and "in bad faith, with the wrongful intent of injuring [the plaintiff], and in conscious disregard of [the plaintiff's] rights." None of these allegations state that this conduct was undertaken to discriminate against [the plaintiff] *because of* his disabilities.

*C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1155 (E.D. Cal. 2009) (emphasis added).

Here, like the plaintiff in *C.B.*, Plaintiff argues that Costco knew he was disabled yet still acted in bad faith in its dealings with him. (*See* SAC at 4.) And like the plaintiff in *C.B.*, Plaintiff fails to state factual allegations sufficient to show that Defendant's conduct was undertaken to discriminate against Plaintiff *because of* his disabilities. (*See supra* Section III.A.1.) Therefore, Plaintiff's Unruh Act claim fails for the same reasons his ADA discrimination claim fails. *See also Roman v. Los Angeles Cnty. Dep't of Soc. Servs.*, CV 12-437 PSG (SHx), 2013 WL 11316939, at *4 (C.D. Cal. Mar. 12, 2013) (granting

summary judgment for the defendant on an Unruh Act claim because "there is no evidence on the record that [the plaintiff] was discriminated against based on his disability"). The Unruh Act discrimination claim is **DISMISSED**.

**B. ADA Retaliation (Count Three)**

As the Court explained in its previous Order, "there can be no retaliation . . . claim without an underlying ADA discrimination claim." (Doc. 8 at 11 (citing *Estavillo v. Cortese*, Case No. 23-cv-04032-VKD, 2024 WL 2808651, at *4 (N.D. Cal. May 30, 2024) (holding that "the complaint does not allege sufficient facts establishing a claim of discrimination under the ADA, which is 'the predicate for any claim of retaliation'" under the ADA) (quoting *McColm v. San Francisco Hous. Auth.*, No. C 02-5810 PJH, 2015 WL 3396673, at *7 (N.D. Cal. May 26, 2015) ("[B]ecause plaintiff cannot allege a claim of discrimination under the ADA . . . , which constitutes the predicate for any claim of retaliation . . . , she also cannot assert a claim of retaliation" under 42 U.S.C. § 12203.)).) Plaintiff failed to respond to this finding in his SAC or his Opposition. Therefore, the Court again **DISMISSES** Plaintiff's ADA retaliation claim.

**C. Elder Abuse Act (Count Four)**

In relevant part, the Elder Abuse Act defines "abuse of an elder" as "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." Cal. Welf. & Inst. Code § 15610.07(a)(1)–(2). To succeed on an Elder Abuse Act claim, "a plaintiff must demonstrate that a defendant: (1) subjected an elder to statutorily-defined physical abuse . . . and (2) acted with recklessness, malice, oppression, or fraud in the commission of the abuse." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 879 (N.D. Cal. 2010) (citation omitted). As relevant here, "[p]hysical abuse" means either "[a]ssault" or "[b]attery" as defined in sections 240 and 242 of the California Penal Code. § 15610.63(a)–(b); *see also* Cal. Pen. Code § 240 ("An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."); *id.* § 242 ("A battery is any willful and unlawful use of force or violence upon the person of another.").

Defendant argues that the Elder Abuse Act claim fails because Plaintiff's "vague, conclusory descriptions fall far short of the kind of injurious, coercive, or violent conduct the statute contemplates" and he alleges "no resulting harm of any kind." (Doc. 12-1 at 15–16.) However, liberally construed, the SAC alleges that Jay committed a battery. Plaintiff alleges that Jay approached Plaintiff "and had a physical incursion onto Plaintiff *chest to chest*," with Plaintiff having to raise his phone "to block and for protection." (SAC at 8 (emphasis added).) For purposes of ruling on the Motion to Dismiss, the Court assumes without deciding that this allegation constitutes a "willful and unlawful use of force . . . upon the person of another" such that Jay's conduct falls within the Elder Abuse Act's definition of "physical abuse." The Court turns next to the other requirements of an Elder Abuse Act claim.

First, the defendant must have "acted with recklessness, malice, oppression, or fraud in the commission of the abuse." *Davenport*, 725 F. Supp. 2d at 879. Plaintiff does not appear to allege "oppression" or "fraud" in the SAC. "'Recklessness'" refers to a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur." *Delaney*, 20 Cal. 4th at 31 (citation omitted). "Recklessness" is more than mere "inadvertence, incompetence, unskillfulness, or a failure to take precautions;" it "rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.'" *Id.* (citation omitted). "Malice" involves "intentional, willful, or conscious wrongdoing of a 'despicable' or 'injurious' nature." *Id.* (cleaned up). Plaintiff alleges that Jay followed Plaintiff around the store several times, attempted to physically intimidate him, and "had a physical incursion onto Plaintiff" potentially as retaliation for Plaintiff speaking poorly about Nadia. (*See* SAC at 3–4, 6, 8, 21–22.) Liberally construed, these allegations may plausibly state that Jay acted with "recklessness" or "malice." *See also Yufa v. TSI Inc.*, No. CV 09-01315 KAW, 2012 WL 5818291, at *4 (N.D. Cal. Nov. 15, 2012) ("It would be improper for the Court to dismiss the case based on such a question of fact regarding . . . state of mind.").

Second, where, as here, a plaintiff alleges that an employer is liable for the conduct of its employees, the employer must have (1) "had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others;" (2) "authorized or ratified the wrongful conduct;" or (3) been "personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b); *see* Cal. Welf. & Inst. Code § 15657(c) (stating that § 3294(b) governs an employer's liability under the Elder Abuse Act). Plaintiff has not sufficiently alleged any of these three requirements. Therefore, the Elder Abuse Act claim is **DISMISSED**.

**D. Negligence *per se* (Count One)**

Plaintiff argues that his negligence *per se* claim "is based upon the Defendant's non-compliance regarding Title III of the ADA." (SAC at 4.) But as the Court previously found, "the ADA does not create a duty of care giving rise to a negligence claim." (Doc. 8 at 10 (citing *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1344 (E.D. Cal. 2020) ("Plaintiff provides no authority, nor is the Court aware of any, to show that Congress enacted the ADA as a separate duty of care to give rise to an independent negligence claim under state laws."); *Jones v. Nat'l R.R. Passenger Corp.*, Case No. 15-cv-02726-TSH, 2023 WL 6450528, at *4 (N.D. Cal. Oct. 2, 2023) ("Plaintiff's reliance on the ADA is misplaced here, as courts have declined to find that the ADA is a statute establishing a duty of care to maintain an independent negligence claim") (collecting cases).) Plaintiff failed to respond to this finding in his SAC or his Opposition. Therefore, the Court **DISMISSES** Plaintiff's negligence *per se* claim to the extent it derives from the ADA.

But Plaintiff also alleges that he may bring a negligence *per se* claim because "there was a failure by Costco's employees mandated to report incident of bodily incursion by Jay" under the Elder Abuse Act. (SAC at 4.) Defendant argues that this theory fails "because there are no facts to support a finding that any of Costco's employees are mandated reporters" or "that Costco owed a duty to Plaintiff to report such conduct." (Doc. 12-1 at 13–14.) Plaintiff argues that optometrists and "[o]ptometrist staff including

administrators, supervisors, receptionists, technicians, and any staff in the provision of optometry care services for elder adults" are mandated reporters. (Doc. 13 at 4.)

Assuming without deciding that the optometrists and optometrist staff at Costco were mandated reporters subject to the reporting requirements of the Elder Abuse Act, Plaintiff's claim still fails because he has not adequately alleged that these Costco employees "ha[d] observed or ha[d] knowledge of an incident that reasonably appear[ed] to be physical abuse." Cal. Welf. & Inst. Code § 15630. Plaintiff specified that he was not at Costco Optical, but heading toward the "membership counter," when the alleged physical abuse by Jay occurred. (SAC at 8.) There are no allegations that any member of Costco Optical witnessed, or had reason to know about, the alleged physical incursion. Plaintiff alleges that Nan, an employee at Costco Optical, "apologized for her co-worker's behavior," but that statement alone does not satisfy Plaintiff's burden to show that, under the Elder Abuse Act, he was owed a duty of care and that duty was violated. Therefore, the Court also **DISMISSES** Plaintiff's negligence *per se* claim to the extent it derives from the Elder Abuse Act.

**E. Defamation (Count Five)**

Plaintiff asserts a defamation claim arising from the following actions: (1) "Defendant's counsel wrote Plaintiff, 'As you know, you are no longer a Costco member because of your previous mistreatment of Costco employees;'" (2) Defendant's counsel told Plaintiff that "Costco is allowed the exception to deny access to pharmacy in circumstances of threat of harm to staff;" and (3) Costco "circulated Plaintiff['s] photograph as recently as December 8, 2025, when workers approached Plaintiff in his vehicle referring to their cell phone screens." (SAC at 7–9.) Defendant argues that the defamation claim fails because Plaintiff: (1) relies on privileged communications; (2) identifies no publication to any third party; and (3) alleges no communicative content that could convey a defamatory meaning. (Doc. 12-1 at 16–17.) The Court agrees with Defendant.

Defamation "involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999) (citations omitted). "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Id.* "Publication need not be to the 'public' at large; communication to a single individual is sufficient." *Id.*

To the extent Plaintiff asserts a defamation claim arising from communications conveyed by Defendant's counsel in connection with this litigation, his claim is barred by the California litigation privilege. "The California litigation privilege applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 965 (N.D. Cal. 2022). "California courts have given [the privilege] 'expansive application' and 'the privilege has been extended to *any* communication . . . and to *all* torts other than malicious prosecution." *Id.* (citation omitted) (emphasis in original). Furthermore, the statements allegedly conveyed by Defendant's counsel to Plaintiff were not conveyed to any third person. Therefore, Plaintiff cannot assert a defamation claim based on Defendant's counsel's statements.

The last statement of which Plaintiff complains, the photo of him that was allegedly circulated by Costco to its employees, could form the foundation for a defamation claim. *See Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 883 (9th Cir. 2016) ("A photograph, especially when coupled with text, can convey a powerful message: in this case, a potentially defamatory one."). However, all the SAC alleges is that Costco circulated a photograph of Plaintiff such that several employees were able to refer to the photograph of Plaintiff on their cell phones. (*See* SAC at 9.) Although Plaintiff alleges the photograph was posted "for false and contested reasons," he does not allege that the photograph included any of those "false and contested reasons," nor that the photograph itself had a "natural tendency to injure" or "cause[d] special damage." *Smith*, 72 Cal. App.

4th at 645. Therefore, as pled, Plaintiff cannot assert a defamation claim based on the alleged circulation of his photograph. The defamation claim is **DISMISSED**.

**F. Leave to Amend**

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court also considers bad faith, undue delay, prejudice, futility, and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Leave to amend should be granted if the complaint's deficiencies can be cured with additional factual allegations. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Courts have "especially broad" discretion to deny leave to amend where the plaintiff has already had multiple opportunities to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) (citation omitted).

The Court will dismiss the ADA discrimination, Unruh Act, and retaliation claims without leave to amend. The Court will grant Plaintiff one final opportunity to amend the Complaint as to the defamation claim, the Elder Abuse Act claim, and the negligence *per se* claim to the extent it derives from an alleged violation of the Elder Abuse Act.

Plaintiff has now had three opportunities to adequately allege a disability discrimination and retaliation claim. (*See* Doc. 3-2 at 10 (state court demurrer of initial complaint); Doc. 8 (Court's previous Order dismissing First Amended Complaint).) Plaintiff's arguments and allegations regarding his ADA and Unruh Act claims have been essentially the same throughout the three iterations of his Complaint. Given his multiple opportunities, and failures, to allege a discriminatory policy or practice employed against him on the basis of his disability, the Court finds it appropriate to dismiss these claims without leave to amend a fourth time. *See Leighton*, 833 F.2d at 186 n.3.

The same cannot be said of Plaintiff's defamation, Elder Abuse Act, and negligence *per se* claims. These causes of action were raised for the first time in the SAC, and, as described above, it is possible that Plaintiff may plausibly plead these claims through additional or more specific factual allegations. Because the Court does not find that

amendment would be futile as to these claims, and because Plaintiff has not had multiple opportunities to amend them, the Court dismisses these claims with leave to amend.

## IV. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 12). Plaintiff's ADA discrimination claim, Unruh Act claim, and retaliation claim are **DISMISSED without leave to amend**. Plaintiff's negligence *per se* claim, to the extent it derives from an alleged violation of the ADA, is also **DISMISSED without leave to amend**.

Plaintiff's defamation claim and Elder Abuse Act claim are **DISMISSED with leave to amend**. Plaintiff's negligence *per se* claim, to the extent it derives from an alleged violation of the Elder Abuse Act, is also **DISMISSED with leave to amend**. Plaintiff **MAY NOT** add any new causes of action to the third amended complaint.

Plaintiff may file a third amended complaint in accordance with the directives above on or before **August 27, 2026**. In light of Plaintiff's previous amendments, Plaintiff is cautioned that if he chooses not to file a third amended complaint, or if the third amended complaint does not cure the pleading deficiencies, his claims may be dismissed with prejudice and without further leave to amend. If Plaintiff realleges causes of action that have been dismissed without leave to amend, or if Plaintiff alleges new causes of action, those causes of action will be stricken for noncompliance with this Order.

**IT IS SO ORDERED.**

Dated: July 27, 2026

Ruth Bermudez Montenegro

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE